Integrated Systems, Mr. Lorem. Thank you, Your Honor. May it please the Court, my name is Brent Lorem and I'm here on behalf of WeTronix. This case is about claim construction. There are two limitations that EIS says they don't meet in these claims, the probability density function estimation limitation and the defining lanes limitation. Was there ever a claim construction hearing, a Markman hearing in this case? Well, Your Honor, we in the case we discussed claim construction at some length. There never was a claim construction order that issued from all of those days of pretrial conferences. What was the nature of this pretrial conference? Because testimony was taken from experts and... It was a very different sort of pretrial conference. Judge Jenkins, who is the court below, typically has these pretrial conferences where he comes in and he asks the attorneys a lot of questions about their theories and their law. And then about midway through that he said, well, bring your experts in. We're going to hear from them. And so we brought our experts and had four days of testimonial evidence. And then we argued some more and went on for 14 days. But he did not ever issue a claim construction. And that's part of the problem that we have here is that we don't have a clear claim construction of these terms or any other terms. Well, was this anticipated to be a bench trial? No, it's a jury trial. It's not clear why he did what he did, but he did. Now, getting back to these two limitations that are... Mr. Long, let me ask you something. I think Judge Patel raised the same question that I was thinking about. So we have a situation where there was, I guess, and I'm not saying this in a pejorative sense, but there was some kind of a hearing. Yes. Right. And it had maybe some flavor of claim construction attached to it in terms of what was said. There was certainly arguing about claim construction. But we don't have any sort of a claim construction order coming down from the district court, right? That's correct. Neither as a separate order nor in the final opinion. Now, that, and obviously in an infringement situation, we have to, you know, you have to first construe the claim and then apply it to the accused device. We have a number of decisions in our court where in this kind of a circumstance, we have sent the case back to the district court for a claim construction. We've said when there's no claim construction by the district court, we have to send it back. Now, I will note that I think you could point to a case, maybe one or two on the other side, where we have construed a claim. But what should we do in this case? In this case, Your Honor, because claim construction is a question of law and there are only two limitations at issue, it's our view that the court should construe these claims, reverse the judgment, and remand for entry of judgment of a literal infringement. There really isn't any dispute about how the accused device works. The real question is what the claim terms mean, as is true in many cases. But in this case, we believe that this court should construe the claims, as we've set forth in our briefs. Let's assume that I'm correct on the law that there are kind of cases, you know, say two cases on one hand say that we should send it back for construction and two cases on the other side that one could point to where we did construe it. How do we know when we see a case where we can construe the claim or where we should send it back? You understand I'm not wording it probably too well, but... Well, I think I understand the court's question. I think that in this case, where there has been so much time spent in this pretrial conference, and the court initially, when it granted summary judgment sua sponte in February, I believe it was, of 2007, actually adopted Wavetronix's claim interpretation. He said that three times from the bench and then granted summary judgment against us. In light of that, and then he later had EIS file an opinion that he was going to sign, apparently, that had claim construction in it, we objected, and then he withdrew his prior order on summary judgment and then had another hearing in June of 2007 and then issued ultimately what we have now before the court. Under those circumstances, I think that it behooves this court to make it clear what these claim terms mean. Well, is there enough evidence in the record for us to make that determination? I believe there is, Your Honor. I believe the intrinsic evidence in this case is clear. If I could start with perhaps the first limitation, the probability density function estimation limitation. The biggest problem that we have with EIS's construction is that it picks and chooses the embodiments it wants to cover. Its construction excludes disclosed embodiments in the specification. For example, EIS says that you have to, as part of the PDFE, calculate probability. You must calculate probability, they say. The problem with that is figure six and figure eight of the specification, which are said to be preferred embodiments, are not normalized. They have integers in the counts in the bins, and when you are not normalized, you cannot calculate probability. It's a known fact. So the preferred embodiments, at least two of them, are not normalized and are not a calculation of probability. Therefore, while the claims may include PDFEs that calculate probability, they certainly do not require them. Are we talking about calculating or estimating probability? Is there a difference in the terminology, or is there some other difference? There actually is a difference, Your Honor. The language the defendants rely on is at the top of column four, where it says the probability density function describes the probability that a vehicle will be located at any range. That's about line two to four. The problem with that is that's talking about a PDF, not a PDF estimation. And we're not estimating probability, we're estimating a PDF. Those are two different things. Some things in a PDF are important for purposes of this estimation. Some are not. Probability is one of those that is not, as is shown in figures six and eight. Another thing that they talk about in their brief is this discrete vehicles business, that you have to assign detections to a particular vehicle as opposed to having many detections per vehicle. Those are referred to in the specification as vehicle detections. If you look in the patent, figure three talks about the process and the steps that are used in these claims. One of those steps is a PDF estimator. And if you look at the bottom of column six, it explains how that happens. It says that the radar goes out, it hits an object in the roadway, it's reflected back, and then the magnitude of the strength of that signal is compared to what is called a detection threshold. If it exceeds the threshold, it says at the bottom of column five that a detection, excuse me, it says a detection threshold is set, and when the Fourier transform magnitude exceeds the threshold, a vehicle detection occurs. And then importantly, it describes that vehicle detection as the building block from which the PDF estimation is made. At the top of column six, it says the vehicle's position is recorded in a step 320 with the vehicle's position measurement, that's the vehicle detection, being recorded and contributing to the vehicle position probability density function as estimated in step 322. So the PDF estimation is built on these individual signals that exceed a threshold, vehicle detections. Now there are other spots in the specification where it talks about counting vehicles. They mention that in connection with figure eight. That's true, it does. All that means is the claims cover both. What we're trying to get at here is vehicle position information. In column seven of the patent, at about line 41 or 42, it talks about an alternative way of computing this PDFE. It says that you have to gather information about vehicle position on the road, and this collection of position information is more or less the histogram explained above. It's all about figuring out where the vehicles are, not how many there are, and not what the relative probabilities are. We're trying to define lanes. Now if I could move on for a moment to the box. But is it actually requiring a particular vehicle position as opposed to taking in a number of positions that it may be one vehicle or it may be several vehicles have and essentially It may be either of those, Your Honor, but remember that what we're trying to do is figure out where the cars are traveling, because that's where the lanes are. And in that calculus, what matters is where they are, not whether it's one or the next or the other. It's just that vehicles are in that particular lane. That's what matters for purposes of this patent. Now if I could shift gears here for just a minute to the bias argument that they say that you cannot construct a PDF estimation using biased information. The claims suggest a bias. It says a selectable plurality of vehicles. What does that mean? A selectable plurality of vehicles is the number of vehicles that can be chosen. And so for every time that you, every instance that you put into this PDFE, that vehicle has to have been detected, estimated, and reported, its position. So it is some, not all. It's a subset of all between the parties. They have not raised. Selectable plurality of vehicles. They have not raised that separately, no, Your Honor. And bias is inherent in the process, because if you do it in the morning, you're going to get more traffic going into town. If you do it in the afternoon, you're going to get more traffic coming out of town. Bias is inherent. You can do this with so-called biased data, because again, it's where the vehicles are, not how many there are, or the relative probabilities. Your Honor, they also talk about this defining lanes issue. They say that you have to calculate the width of the lanes from the PDFE. Well, that's not true. Their argument assumes that you have to have multiple range bins per lane. That is rebutted entirely by the doctrine of claim differentiation. Claims 3, 10, and 11 are range bins. If you couldn't do this with one range bin, then that language would be superfluous in the dependent claims. Last, Your Honor, for the reasons stated in our brief, we believe that we should be allowed to argue equivalence on a rebate. Let me ask you one question. We'll save you rebuttal time. It seemed pretty clear from the way the district court approached the opinion in this case, that he felt that your client's invention was an elaborate refinement, a more elegant kind method of achieving these results than that of the accused infringing device, and left a pretty clear impression, at least to me, that if, in fact, your claims were interpreted as broadly as the broadest claim conceivably might be, that there were other problems which the court didn't reach of prior art. For instance, he kept talking about that their system was less elegant, more crude, and all the rest of it, and that the breadth that you were seeking would, could, and perhaps would, but in any case could, bring additional problems that weren't yet before the court on these various summary proceedings that the court decided. If, in fact, we were to send it back, I suppose all of that is, again, ripe for reopening, not the issues of inequitable conduct and those that were decided by the court, but breadth and validity and so on. Is that your understanding of the posture of the case? Undoubtedly, Your Honor. He, in fact, dismissed the counterclaims for invalidity without prejudice pending the decision of this court, so they would come back up if it were remanded. Okay. All right. Let's hear from the other side. Good morning, Your Honors. Mr. Rochford. Richard Rochford for Apelli EIS with me as Michael Orman. Your Honor, to your point you just made, indeed, the EIS system represents something totally different than what this patent covers, and, in fact, the EIS system practices the prior art in terms of a crude, what's called a NAMP array that sends a signal out and detects a vehicular presence and assigns values, not on a one-to-one basis, but based on the number of hits in these 10 millisecond passes that the radar makes off of the vehicle. So there's nothing probabilistic with the EIS system. One truck going by at 50 miles an hour, as their expert conceded, would result in 10 hits and would create or confirm the presence of a lane in our system, and that simply won't work in anything resembling a PDFE. What a PDFE is, and the elegant system Your Honor described that this patent covers, is something where you detect each of said position, each of said selectable plurality of vehicles. That's what the patent claim refers to. It's counting the number of cars, and how they do that is through probability, and you have to give probability its ordinary meaning. You can't read it out of the claim and out of the spec as Wavetronic seeks to do. The probability is the relative possibility that an event will occur as expressed by the ratio of the number of actual occurrences to the total number of occurrences, and that ratio here is the number of cars. So for example, if you have four lanes and one car in each lane, under their system what that will pick up is that the probability of a car being in lane one is 25 percent. Under our system, based on the size and speed of those cars and the array, you'd have differing values. So you might end up with a big truck in lane one that would give you an eight value, which would suggest that 40 percent of the vehicles were in lane one, which would be inaccurate. It would not allow the type of dynamic definition that their system requires. Mr. Rochford, let me ask you, picking up on the same question that Judge Patel raised with Mr. Lorimer, what do we do about the absence of a claim construction here? Your Honor, that's one point that we agree with Wavetronic on. We think you press ahead and that there is a complete record here to determine a proper claim construction of the primary determinant issue. So you agree with Mr. Lorimer that there wasn't a claim construction issue, there wasn't, I'm sorry, there was no claim construction and you agree with him that we should decide it? Yes, Your Honor. Now, assume we follow that course and come down with a claim construction, what should we do then? Should we not send it back to the district court for a determination of infringement? No, Your Honor. I think that both of those determining the claim construction. I can understand why the parties would naturally want to have that, but doesn't it really put us in the position of fact-finding? Because assume we were to follow your request and Mr. Lorimer's request and were to issue a claim construction, okay, we have a claim construction, then we have to go out and make findings with respect to literal infringement and doctrine of equivalence infringement. I realize you say DOE isn't properly before us, but leaving that aside for the moment, how can we as an appellate court do that? I think the record is complete. Judge Jenkins followed a procedure where he developed a very complete record. It's been fully briefed. Sorry to interrupt, but time is fleeting. How is it though in any way complete on DOE? Now, I realize you say that DOE isn't properly before us, but putting that aside, how could we make a determination after we construed the claims as to whether or not there was DOE infringement? I think in this case, Your Honor, the analysis will be very simple because the function way result of their system or their invention compared to our system is just totally different. Theirs functions through a probabilistic type of approach. Ours does not do that. Their result is a count of cars. We don't count cars. You'd have to read out the PDF claim limitation entirely to find any type of DOE claim here. So I understand the court's reticence to follow through all the way in those terms, but I think the record here is sufficiently complete and the patent is sufficiently clear about what a PDFE is and what it requires, and that what the defendant was doing was in no way like that. If we went through that process and then determined that there was and didn't determine that there was infringement, what happens then? You go back to the district court to then proceed with the various invalidity defenses that you have? I think that's right, and I think one option would be for your court to say there is some question of fact about infringement. This is in a summary judgment context, and our position is there are no material issues of fact around that. Well, what terms do you believe would need to be construed in order for us to perform the claim construction? If this court constructs the ordinary meaning of PDFE, I believe that would be sufficient. Is there a dispute about what PDFE means? I don't really believe there is. It's a little hard to tell. As I understood Mr. Lorimer's attempting to read out the probability aspect of it, so in that sense there may be a dispute, but we clearly set forth in our brief what we believe it is, which is right out of the summary of the invention. The probability density function describes the probability that a vehicle will be located at any range, and that definition is repeated throughout the specification. The probability density function estimates a vehicle position at column 7, lines 27 to 29. The vehicle position PDF represents the probability that a vehicle will be located at any range, and that's from column 6, lines 10 and 11. So the pattern is replete with telling us as the scrivener, the inventors, what a PDF is and what it means. So, Mr. Rock, in response to Judge Patel's question, she asked what claims do we have to construe if we went down that road, and you're saying PDFE. Do you say anything else? No, Your Honor. I think that is sufficient to confirm the summary judgment of non-infringement that the court gave. Is there a dispute about what is meant by selectable plurality of vehicles? No, Your Honor, and Wavetronics put in a value neutral proposal. There were claim construction briefs filed in the case, and at that point, Wavetronics said that selectable is capable of being selected, so it's a value neutral term, and we're fine with that. But the extension that counsel made in his argument that just by virtue of invoking the term selectable, you're putting some type of bias, doesn't follow from the claim construction they proposed, which is value neutral. No, I'm sorry, were you finished answering Judge Patel's question? Yes, I'm fine. Let me ask you, for us to basically rule on whether there's infringement or not, I agree that you're saying just construe PDFE, but don't we in effect have to construe all the limitations if we're going to rule on infringement as you're urging us to do? Because we have to say, okay, here's the first limitation. It means this. It's met an accused product with this. I mean, wouldn't we have to go down through the claim in its entirety? For purposes of this appeal, Your Honor, and determining whether summary judgment of non-infringement is appropriate, we are prepared to rest on your determination of PDFE and whether or not that resolves the case. If you find that that creates issues of fact, which I don't believe you can or will, then I think when it goes back, it may be appropriate to- Well, what would be the result then if we said that the PDFE limitation is met in your product? Are you saying that in that instance, you would concede infringement? No, Your Honor. What I think the inquiry would be is whether or not there's a question of fact as to whether it's met. Whether or not under, as a legal matter, there's no material issue of fact. If we say there's a fact issue, then it would go back. If we say there's no fact issue, what do we do then? You affirm the summary judgment. Or I suppose hypothetically, if you found there was no issue of fact and you concluded based on this record, then in fact there was infringement, that would be available to you as well. But that means that you're conceding there- We are conceding on the other claim terms. All the other limitations. Correct. You're effectively saying then that you meet the other limitations except PDFE. For purposes of this appeal. And what you're saying is that the function as described by whatever we would define PDFE as is not in the accused's device, right? That's right, Your Honor. And they admitted. Well, let me take you through the next steps. Our position is that the PDFE requires a vehicle count. And it's not just our position, it's what the patent says in numerous places. Well, does it require a vehicle count or does it require selecting a plurality of vehicles and then essentially tracking those? Your Honor, it requires counting the vehicles that you have- One by one? One by one. And I'll direct your attention- But what is the meaning of figure, I think it's five. Figure five. What do you understand is going on there? Figure five. Let me find the text on the- Figure five shows the sidefire deployment. I'm looking at column six, line 66. That just shows the side finder, fire approach, and the distance or range that's set to set the bins, Your Honor. What I think is appropriate- And those bins go across lanes or are they solely within lanes? In figure five, what is shown there is a plurality, a number of bins within each traffic lane. And again, our system does not do that. It does not isolate slices or- You do lane by lane? We do it lane by lane. In fact, we just confirm the lane boundaries in our system. We don't attempt to measure the vehicles going through and dynamically set it in this But back to your point, Your Honor, on whether or not the patent requires that you count vehicles, I'd direct your attention to the discussion of figure three that Mr. Lorimer read part of it to you, but he didn't read the end of it. This is at column six where it's describing the steps that the invention's processor takes. And if you go on to column six, line six, the vehicle position PDF represents the probability that a vehicle will be located at any range. So it's clear there that what is being talked about is a vehicle and searching for a count. Your Honor, I wanted to mention- But it's a probability that where a vehicle will be. And the only way you can determine a probability, Your Honor, is actually to count cars. There's no other way. It's a matter of simple math. If you don't have a one-to-one correlation between the number of cars and trying to tell where the lane is and what the density of traffic is, then you don't have a PDFE. It simply fails as a matter of math. Further, Your Honor, the count- I wanted to point out one other sort of misleading aspect of Mr. Lorimer's talk about these alternative ways of determining a lane boundary at column seven with reference to figure six. And he noted that the collection of information that's required under that is more or less the histogram explained above. And that text at line 25 talks about creating that histogram and says, the number of vehicles in each bin is counted with the count incremented when an additional vehicle is detected. So what their system requires and what they teach in their specification is counting cars. It's what the inventors said in their invention disclosure. They told everyone, and this is part of the record at A4257, the number of vehicles in each bin is counted and incremented when a vehicle is detected in it. The figure eight talks in terms of vehicle count and has a maximum of 350 on that y-axis. That can only mean counting individual cars. If it was sensing in these 10 millisecond passes, that would be in the hundreds or thousands of hits on that y-axis. So it's clear that everything in their patent is directed to a car count. It's the only way that at the end you can determine probability. What they are suggesting now, if under the view that the EIS system could infringe, it would be like taking children in a selected age group and saying, you're only going to count the short children once, and you're going to count the tall children a couple times to figure out what the height is of the children. And that is why you can only have a PDFE if you count cars, and why that's a required aspect of that claim limitation, and why their infringement claim must fail. I know Judge Schallert... Yeah, so I just want to confirm the procedural point, and make sure I understand what you want us to do. I picked this up from the colloquy that you had with me and Judge Patel. You want us to, number one, construe the term PDFE. Then you want us to decide whether there is a fact issue on whether that limitation is met in the accused device. Then the third step is, if we decide there is a fact issue, send it back to the district court. If we decide there is not a fact issue, you want us to rule on the infringement issue, whether, and you let the chips fall where they may, whether we would find infringement or non-infringement. Correct. Okay. Okay, well, while we're on that point, the impression that I got from the district court's opinion, at least without going back over the entire record of those 14 days, is that a good deal of that time was devoted for the court to understand what the invention was and what you were doing, what each of you was doing. And based upon which, then the judge looked at the claims, looked at the patent, and must have had either some discussion as to what was in the prior art, or at least your representation of what you were doing was in the prior art, in order to reach the conclusions to describe the processes as he did. That's correct, Your Honor. And essentially to conclude the same points that are now before us, I suppose, on appeal to review as Judge Schall has isolated them. I believe, yes, that's absolutely correct, Your Honor. And we believe that the assertions that Wavetronics is making here would wrap up the prior art. And by claiming now that their patent covers vehicular presence rather than counting cars, it would wrap it right into the 983 patent that's cited and other aspects of the prior art. In fact, the prelude to their invention in the specification talks about those prior art systems and in fact discloses this type of vehicular presence detection that is what we do. And just so we're clear on that, Your Honor, if you get to the infringement question, it's undisputed by Wavetronics that we do not do any type of probabilistic analysis and we do not count cars. So the only way that you could hold against us, in effect, is to read probability out of this patent. Well, and it would require us essentially to go through everything that should be a part of the record or was a part of the record before the district court in perhaps deciding PDFE, but certainly with respect to whether there was infringement. Correct? That's correct, Your Honor. And I don't know about my colleagues, but I was at a loss when I went to look through some of the appendices and to read some of the testimony that just when I got to a part that I thought, gee, I'd like to know what says on the next page and the next page wasn't there. You can't blame the parties for that. We have a very strange rule in this court about the very limited number of pages. So if need be, we'll have to underwrite it. Okay, I'm glad to hear that then. Thank you. No, that's our doing. Okay, I won't blame it on your designation as a record. Thank you. Okay, thank you, Mr. Rochford. Mr. Lorimer. Thank you, Your Honor. I want to just jump in on you if I can. You heard my last question to Mr. Rochford where I told him here's what I understand you want us to do as a procedural matter and he gave his response. Do you agree or disagree with what he said? He laid out a roadmap that he wants us to follow and I, of course, want to hear what you have to say about that. I don't remember verbatim what he said, so perhaps it's easier for me just to tell you what I think should happen. Well, let me add it. So you want us to construe PDFE. Do you want us to construe anything else? I think Mr. Rochford has conceded that they have everything else. Okay. Then you want us to decide, I assume, whether there is a fact issue as to whether the EIS system meets that limitation. Well, ultimately, yes, Your Honor, but there really isn't any dispute about what they do. It's just a question of application of the claim construction to the accused device. They admitted below in the testimony part of the pretrial hearing that our expert's description of their device was completely accurate. But you agreed as an appellate court. I mean, we would have to decide first, okay, we construe the claim, then is there a fact issue? Well, generally... You would say there's no fact issue, I understand. I would. But we have to go through that drill. And you would agree that if we find there's a fact issue, we have to send it back, right? If you find a fact issue, you certainly have to send it back. And if we say there's not a fact issue, we can decide it? Yes. Okay. But clearly then, EIS's expert must take issue with what your expert has testified to, correct? EIS's expert takes issue with the claim construction. He doesn't take issue with how we describe what his device does. Everybody... It's code, it's software code, and everybody went through the code and everybody agrees what they do step by step. There's no doubt about what they do. And in fact, in their briefs, I think they agree that we have described what they do. They disagree as to whether it qualifies as a PDFE. But that's a claim construction issue. I'm going to ask you about the counting cars. Yes, ma'am. Is in fact the PDFE, or the system that is described in the patent, does that in fact require or involve the counting of cars as opposed to a group of vehicles that will be viewed essentially and then estimates and probabilities determined from that? No, ma'am. And let me tell you why. It is true that you can do this by... I'm not sure you could answer that question with a no, but go ahead. Well, sort it out, isn't it true? It's a little too long and complicated. It is certainly true that you could do it by counting cars, but you don't need to. It's interesting that when Mr. Rochford read the parts of the specification that he relies on for the idea that it has to be probabilistic and you have to determine probability. There are two places where it says that. And I'd like the court to note those. Those are at the top of column four in lines two to four and at the top of column six at about lines seven to nine, I believe it is. And in both cases, the language says this. The probability density function describes the probability that a vehicle will be located at any range. The probability density function, not the PDFE. Remember, what we're talking about is an estimate of a PDFE, not a probability density function. And if you look at the specification and what builds these PDFEs, you'll see very clearly that what is described at the bottom of column five and the top of column six is sending a signal out, having it bounce off a car, come back, exceed the detection threshold. And those, it says in the bottom of column three, a detection count is maintained. A detection count. Well, a vehicle detection is one of those signals coming out and bouncing back and exceeding the threshold. Okay, but is a detection, maybe that's what's misleading about this. Isn't a detection count different from a vehicle count? Which suggests you're counting the actual number of vehicles as opposed to detecting what may be the same vehicle two or three times. A detection count is different. And what I'm saying is under this court's precedent in OT, OT versus IPS decided earlier this year, it's improper to construe the claims to exclude disclosed embodiments. Clearly, it discloses here the use of detection counts, that is counts of detections that exceed the threshold to build the PDFE. Again, we're not counting cars here. We're trying to figure out where they're traveling. And for that purpose, these detection counts, vehicle detections are just as valuable as counting the number of cars because they're all traveling in these lanes. Right, right. Judge Schall, I wanted to clarify one thing I said to you. You asked if there were any factual issues. On literal infringement, I don't think there are. But on equivalence infringement, if this thing is remanded, then certainly there are going to be fact issues on it. So you're saying if we found, if we construed the claims and found no literal infringement, we couldn't decide DOE. We'd have to send it back. Those are clearly fact issues. And just to be clear, there's no other terms that you say should be construed. I mean, you agree with Mr. Lormer, all we should construe is PDFE. That's correct, Your Honor, because as I heard Mr. Rochford, he conceded everything else. I'm sorry, Mr. Rochford. That's okay. My apologies. That's okay. He's more handsome than I am, so it's all right. Okay, any more questions? Any more questions? Thank you for your time. The case is taken under submission. Thank you both. Thank you.